UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

FILED
MAR 27 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES KNOWN AS THE BAR ON BOND LOCATED AT 4301 C BOND AVENUE, EAST ST. LOUIS, ILLINOIS, FURTHER DESCRIBED AS A TAN BRICK BUILDING WITH A CREME COLORED ROOF. | Case No. 3:15-mj-3047-DGW<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, **Chad Nord**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Task Force Officer with the Drug Enforcement Administration (the "DEA") and have reason to believe that on the premises known as:

**The premises known as the Bar on Bond located at 4301 C Bond Avenue, East St. Louis, Illinois, further described as a tan brick building with a crème colored roof,**

which is located within the City of East St. Louis, in the Southern District of Illinois, there is now concealed certain property, namely

**See the attached list entitled "Attachment A, Items to be Seized,"**

which constitutes evidence of the commission of a criminal offense or which is contraband, fruits of the crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of an offense, in violation of Title 21, United States Code, Sections 841 and 846. The facts to support the issuance of a Search Warrant are as follows:

1. I am a Task Force Officer currently assigned to the DEA Fairview Heights Resident Office Metro East Drug Task Force. I have been assigned to the Drug Enforcement

1

Administration for the past two years and five months. I was assigned to the St. Clair County, Illinois Drug Tactical Unit prior to my assignment to the Drug Enforcement Administration. I have participated in numerous drug investigations, which have resulted in the seizure of heroin, methamphetamine, crystal methamphetamine, ecstasy, cocaine, marijuana, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, and the utilization of undercover agents.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and Confidential Sources (referred to as CS's). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. This affidavit outlines the undersigned affiant's request for a search warrant for the premises known as the Bar on Bond located at 4301 C Bond Avenue, East St. Louis, Illinois (also referred to as **Target Premises or Target Address**). Based upon the following facts, your affiant believes probable cause exists to search this location.

## PROBABLE CAUSE

4. In March of 2015, members of the Drug Enforcement Administration Fairview Heights Resident Office (FHRO) have been in contact with a confidential source (CS#1) who has provided agents with narcotic related information concerning Randall HARRIS. CS#1 told agents he/she knows HARRIS to be a multi-ounce cocaine distributor who uses target premises as a front to distribute cocaine. CS#1 stated he/she has purchased numerous ounces of cocaine from HARRIS at the target address. CS#1 stated he/she would meet with HARRIS inside the target address where HARRIS would supply him/her with cocaine which was stashed inside the

target address.  CS#1 has cooperated with agents of the DEA FHRO in the past, and the information provided has been corroborated and shown to be reliable.  In 2014, CS#1 provided information in a separate narcotics investigation, which led to significant seizures of controlled substances and to the indictment of three defendants in U.S. District Court for the Southern District of Illinois.  CS#1 is currently cooperating with DEA FHRO in the hope of receiving consideration regarding potential drug charges.

5. Since February of 2015, members of the Drug Enforcement Administration Fairview Heights Resident Office have been in contact with CS#2 who has provided agents with narcotic related information concerning Randall HARRIS.  CS#2 stated he/she knows HARRIS to be a multi-ounce cocaine distributor who uses target address as a front to distribute cocaine.  CS#2 told agents he/she has purchased large quantities of cocaine from HARRIS at target address.  CS#2 stated he/she has purchased upwards of 8-9 ounces of cocaine from HARRIS at the target address during the period of a week.  CS#2 stated he/she has done this on multiple occasions recently.  CS#2 stated he/she believes HARRIS to have other customers that purchase cocaine amounts similar to CS#2.  CS#2 stated he/she has observed HARRIS with upwards of at least 20 ounces of cocaine in his possession at one time while inside the target address.  CS#2 stated he/she would meet with HARRIS unannounced at target address and HARRIS would distribute cocaine to CS#2 from a stash location inside the target address.  CS#2 has cooperated with agents of the DEA FHRO in the past, and the information provided has been corroborated and shown to be reliable.  In 2014, CS#2 provided information in a separate narcotics investigation, which led to seizures of controlled substances and a significant amount of cash.  While that investigation is ongoing, it is expected that charges against at least two suspects will be sought in U.S. District Court for the Southern District of Illinois.  CS#2 is currently

3

cooperating with DEA FHRO in the hope of receiving consideration regarding potential drug charges.

6. On March 23, 2015, agents with the Fairview Heights Resident Office met with CS#2 for the purpose of a controlled cocaine purchase of cocaine from HARRIS at the target address. CS#2 stated he/she would meet with HARRIS at the Bar on Bond, 4301 C Bond Avenue, East St. Louis, Illinois 62207, unannounced and purchase cocaine from HARRIS. CS#2 stated HARRIS would typically arrive at the target address between approximately 4 p.m. and 5 p.m. It should be noted, at the same time CS#2 met with agents at an undisclosed meet location, agents set up surveillance on HARRIS at his home address in St. Louis, Missouri.

7. At approximately 4:06 p.m., agents observed HARRIS depart his residence. At approximately 4:35 p.m., agents observed HARRIS arrive at the target address and meet with individuals outside the target address. It should be noted, HARRIS only made one brief stop at a service station, but did not meet with anyone prior to arriving at the target location.

8. At approximately 4:52 p.m., TFO Chad Nord, witnessed by TFO Lee Rinehart, search CS#2 and his/her vehicle for contraband. This search was met with negative results. CS#2 was then equipped with electronic recording equipment, $2,600.00 in recorded U.S. currency and instructed to meet with HARRIS at the Bar on Bond at 4301 Bond C Avenue, East St. Louis, Illinois. CS#2 was instructed that once CS#2 met with HARRIS and completed the cocaine transaction, the CS was then to immediately meet with agents at the pre-arranged meet location.

9. At approximately 4:55 p.m., CS#2 left the meet location with TFO Nord and TFO Rinehart keeping constant visual surveillance. It should be noted, SA Michael Rehg, FBI SA Richard Box, and TFO Greg Hosp set up surveillance in close proximity to the target address prior to the CS leaving the undisclosed meet location.

10. At approximately 5:14 p.m., FBI SA Box observed the CS arrive at the target location, and also observed the CS proceed to meet HARRIS outside the target address. At this time, SA Box observed both HARRIS and the CS enter the Bar on Bond at 4301 C Bond Avenue, East St. Louis, Illinois.

11. At approximately 5:17 p.m., SA Box observed the CS exit the Bar on Bond and proceed to his/her vehicle. At this time SA Box observed the CS leave the target address and proceed to the undisclosed meet location with TFO Nord and TFO Rinehart following at a safe distance.

12. At approximately 5:26 p.m., the CS, along with TFO Nord, TFO Rinehart and TFO Hosp, met at an undisclosed meet location where the CS immediately turned over all recording equipment and suspected cocaine to agents. TFO Nord, witnessed by TFO Rinehart, searched the CS and the CS's vehicle for contraband, the search being met with negative results. The CS stated he/she met with HARRIS in the parking lot of the Bar on Bond, then proceeded to go inside with HARRIS. The CS stated while inside, HARRIS asked the CS how much he/she wanted before pulling two ounces of cocaine from a Crown Royal bag which was located inside the target address and giving the cocaine to the CS. The CS stated HARRIS mentioned raising the price per ounce to $1,350.00 for small orders and keeping the price the same for larger orders. The CS stated at this time he/she left the target location and proceeded to meet with agents. It should be noted, further review of the recorded audio/video footage corroborated the CS's statements of what took place.

13. The CS stated that it appeared that HARRIS had approximately 4-5 ounces of additional cocaine in the Crown Royal bag.

14. HARRIS has a criminal record to include the following; 1989 arrest for Unlawful

Possession of a Controlled Substance (Disposition unknown), 1990 Arrest for Possession with Intent to Distribute Cocaine (Disposition Unknown), 1991 Federal Conviction for Conspiracy to Distribute Cocaine and Possession with Intent to Distribute Cocaine.

15. Based on the above information, it is believed that HARRIS will continue his drug trafficking efforts in the Southern District of Illinois. It is anticipated that HARRIS will continue to use the **Target Premises** to further the violations of 21 USC 841 and 846.

16. Having been involved in numerous investigations, I have come to learn that people who are involved in buying and distributing narcotics regularly keep records of the amounts of the distributed narcotics, customer names that they are selling to and the amount of money that the customers owe for the narcotics. I have observed that these records are kept at the same location where the transaction occurs. In addition, I have been told by numerous defendants who have been involved in the delivery of narcotics and have observed myself on several occasions that scales and packaging material, including plastic bags, twist ties, and bread ties are usually kept in the same location with the narcotics. I have observed that it is regular practice for individuals involved in selling illegal drugs, to keep additional quantities of those drugs and U.S. currency at the same location where the subject is conducting transactions.

17. I submit this affidavit in support of search warrants for the location within the jurisdiction of the reviewing Court. I have reviewed the description of this premise and believe it to be accurate, particularized descriptions of the premise to be searched.

18. Based upon my and the investigating team's experience and our participation in investigations of other drug trafficking organizations involving large amounts of drugs, I know:

   a.  That drug traffickers very often place assets in names other than their own to avoid detection of theirs assets by government agencies:

b.  That even though these assets are in other persons' names, the drug dealers continue to use these assets and exercise dominion and control over them;

c.  That narcotics traffickers must maintain on hand large amounts of United States currency in order to maintain and finance their on-going narcotics business and often keep said currency in a residence;

d.  That drug traffickers maintain books, records, receipts, notes ledgers, airline tickets, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances;

e.  That drug traffickers commonly "front" (provide drugs on consignment) illegal drugs to their customers;

f.  That the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them;

g.  That it is common for dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in a residence, among other places;

h.  That persons involved in drug trafficking conceal in their residences large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions, as well as evidence of financial transactions relating to obtaining, transferring, secreting or spending of large sums of money made from engaging in narcotics trafficking activities;

i.  That when drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize, including but not limited to, foreign and domestic banks

and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts;

j. It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for their distribution elsewhere in the United States. After purchasing drugs these traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs. The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.

k. That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization;

l. That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product and usually maintain these photographs in their possession;

m. That drug traffickers usually keep near at hand paraphernalia for packaging, cutting, weighing, and distributing of drugs. These paraphernalia include, but are not limited to scales, and plastic bags.

n. That I am aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular trafficking in controlled substances. Wherefore, your affiant believes Randall Harris possesses evidence of conspiracy to distribute narcotics and money laundering thereto and

seeks to search for the aforementioned evidence at: the Bar on Bond at 4301 C Bond Avenue, East St. Louis, Illinois (The Target Premises).

19. Disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardize an ongoing investigation and witnesses who have provided information to the Drug Enforcement Administration. Therefore, your affiant requests that these documents be filed under seal.

FURTHER AFFIANT SAYETH NAUGHT.

_____
CHAD NORD, Task Force Officer
Drug Enforcement Administration

Stephen R. Wigginton
United States Attorney

_____
DONALD S. BOYCE
Assistant United States Attorney

_____
DONALD G. WILKERSON
United States Magistrate Judge



# ATTACHMENT A

## List of Items to be Seized

1. Controlled substances, to include packaging materials, scales, and cutting agents.
2. Firearms, and ammunition
3. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances, including rental vehicle records;
4. Telephone bills, invoices, packaging, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons trafficking in controlled substances or facilitating such trafficking.
5. United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized, derived or obtained as, or from, proceeds from the distribution of controlled substances.
6. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.
7. Photographs, in particular those of co-conspirators, and photographs of assets and/or substance trafficking.
8. Detection devices, such as police scanners, two way radios, motion detectors, video and audio surveillance equipment, and other devices used for the same purpose.
9. Indicia of ownership of the premises described above, to include: utility and telephone bills, trash removal statements and bills, cancelled envelopes, real estate tax statements, construction or improvement bills, materials purchase receipts, insurance documents, and safety deposit box keys.